IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SC PRO TV SA,

    Plaintiff,

       v.

GLOBAL CONNECT NETWORK, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:22-CV-4841-TWT

**OPINION AND ORDER**

This is a breach of contract action. It is before the Court on the Defendant Global Connect Network, Inc.'s Motion to Dismiss [Doc. 12]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 12] is DENIED.

## I.    Background

The Court accepts the facts as alleged in the Complaint as true for purposes of the present motion to dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019). The Plaintiff SC Pro Tv SA is a Romanian company with its principal place of business in Bucharest, Romania. (Compl. ¶ 1). The Defendant Global Connect Network, Inc. is a Georgia corporation with its principal place of business in Buford, Georgia. (*Id.* ¶ 2). The Defendant distributes Romanian television, movies, and news. (*Id.*). In October 2010, the parties entered into a contract ("Retransmission Contract") whereby the

Plaintiff granted the Defendant the non-exclusive right to retransmit the television program "Pro Tv International" to GCN subscribers in the United States and Canada, in exchange for GCN's payment of $12,000 per month in licensing fees. (*Id.* ¶¶ 6-7). If GCN failed to pay the fees pursuant to the terms of the Retransmission Contract, GCN was to pay a penalty of 0.1% of the unpaid amounts per day. (*Id.* ¶ 7).

As relevant, the Plaintiff alleges that it fulfilled its duties under the Retransmission Contract by providing the Defendant with Pro TV International for retransmission and by issuing invoices to GCN for the resulting licensing fees. (*Id.* ¶¶ 14-15). The Plaintiff alleges, however, that for the period from February 21, 2017 through September 16, 2019, the Defendant made only one partial payment towards the total licensing fee amounts owed. (*Id.*). The Plaintiff alleges that it sent the Defendant several notices informing it of the amounts owed, including contractual penalties, and received "only a small number of payments" from the Defendant. (*Id.* ¶¶ 16-19). As a result, the Plaintiff alleges, the Defendant owes more than $950,000 under the Retransmission Contract as of November 8, 2022. (*Id.* ¶ 21).

The Plaintiff filed its complaint alleging one count of breach of contract on December 7, 2022. (*Id.* ¶¶ 22-26). The Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(3), asserting that the Retransmission Contract contains a binding forum-selection clause that requires litigation of any claims arising thereunder to be litigated in Romania.

(Def.'s Br. in Supp. of Mot. to Dismiss at 3-4).

## II. Legal Standards

Under federal law, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). There are two types of forum-selection clauses: ones where "the transferee forum is within the federal court system[,]" and those where the transferee court is outside the federal system. *Id.* at 60-61. Though Congress has codified 28 U.S.C. § 1404(a) to manage the former cases, "the residual doctrine of *forum non conveniens* has continuing application" for the latter cases. *Id.* In cases without a forum-selection clause, a court "must evaluate both the convenience of the parties and various public-interest considerations." *Id.* at 62. However, in cases with a valid forum-selection clause, "[t]he calculus changes," and "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (quotation marks and brackets omitted). Additionally, in these types of cases, "the plaintiff's choice of forum merits no weight," and the district court may consider only arguments regarding public interest factors. *Id.* at 63-64. On a motion to dismiss for improper venue, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. Feb. 23, 2004).

The Eleventh Circuit has noted that forum-selection clauses can be either mandatory or permissive: "A mandatory clause designates a specific forum as the exclusive forum in which to litigate the dispute. A permissive clause merely consents to jurisdiction in the designated forum and does not foreclose litigation in an alternative forum." *Cardoso v. Coelho*, 596 F. App'x 884, 885-86 (11th Cir. 2015); *see also Citro Fla., Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1232 (11th Cir. 1985) (articulating a distinction between "mere 'consent to jurisdiction' clauses and 'mandatory' clauses"). The Eleventh Circuit has further observed that courts typically "require quite specific language before concluding that a forum selection clause is mandatory[] such that it dictates an exclusive forum for litigation under the contract." *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999).

### III. Discussion

As an initial matter, neither party originally provided a translated copy of the Retransmission Contract at issue for the Court's review due to the unavailability of a Romanian translator to translate the agreement into English. (*See* Def.'s Br. in Supp. of Mot. to Dismiss at 2 & n.4). With its motion, the Defendant instead provided a declaration of Dima Samata, a shareholder and officer of the Defendant who is fluent in Romanian. (Def.'s Br. in Supp. of Mot. to Dismiss, Ex. 1 ¶¶ 2-3). In his declaration, Samata purports to translate the relevant forum-selection clause into English. (*Id.* ¶ 6). The Defendant later submitted a certified translation of the Retransmission Contract. [Doc. 17].

4

The Plaintiff, in its response to the Motion to Dismiss, attached a different version of the contract, translated by a translator for the Ministry of Justice of Romania. (Pl.'s Resp. in Opp. to Mot. to Dismiss, Ex. 2). Essentially, the parties dispute whether the forum-selection clause at issue is permissive or binding in nature.

Specifically, the Defendant argues that the Court may consider the Samata Declaration and attachments in ruling on this Motion because it is brought under Rule 12(b)(3). (Def.'s Br. in Supp. of Mot. to Dismiss at 3-4). Additionally, the Defendant asserts that enforcing the forum-selection clause would be neither unfair nor unreasonable because the Plaintiff is based in Romania and the Plaintiff drafted the Retransmission Contract, including the forum-selection clause. (*Id.* at 4-5). The Defendant also argues that the Retransmission Contract must be interpreted according to Romanian law, making a Romanian court a more appropriate forum. (*Id.* at 5).

The Plaintiff opposes the Motion to Dismiss, arguing that Mr. Samata was the signatory for the Defendant on the Retransmission Contract and, therefore, the Court should credit his translation of the forum-selection clause over the Defendant's later-submitted certified translation. (Pl.'s Br. in Opp. to Mot. to Dismiss at 8). The difference between the two, as the Plaintiff notes, is that Mr. Samata interpreted the clause to state that "disputes will be directed towards" a Romanian court, whereas the Defendant's certified translation states that "disputes shall be resolved by" a Romanian court. (*Id.* at 7-8). The

Plaintiff contends that Mr. Samata's interpretation is permissive in nature, as is the Ministry of Justice's sworn translation provided by the Plaintiff, which states that "disputes will be referred to" a Romanian court. (*Id.* at 8-9). The Plaintiff also challenges the Defendant's contention that the Plaintiff was the sole drafter of the contract. (*Id.* at 14 n.2). The Plaintiff argues that, because the Court is obligated to resolve all factual disputes in favor of the Plaintiff at the motion to dismiss stage, the Court must find that the forum-selection clause is permissive and, therefore, that dismissal is not warranted. (*Id.* at 9-14). Finally, the Plaintiff argues that the fact that the Retransmission Contract is subject to Romanian law and was drafted in the Romanian language are not appropriate considerations at this stage and, even if the Court conducts a forum non conveniens analysis, the forum non conveniens factors favor declining to dismiss the case. (*Id.* at 15-18).

To begin, the parties' arguments appear to misconstrue the applicable law by differentiating a motion to transfer venue under Rule 12(b)(3) based on a forum-selection clause with the common law doctrine of forum non conveniens. (*See, e.g., id.* at 15-16 ("Defendant's reference to the choice of law and language of the contract appear to mimic arguments for transfer to an alternative venue under a forum non conveniens analysis.")). But the Supreme Court long ago clarified that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 60. The Court will thus

6

construe the Defendant's Motion under the doctrine of forum non conveniens.

With the appropriate framework in mind, the Court turns to the forum-selection clause itself. As is clear by now, the parties dispute which translation of the Retransmission Contract should be credited. However, at the motion to dismiss stage, the Court is obliged both to accept the allegations in the Complaint as true and to resolve all factual conflicts in favor of the Plaintiff. *Wildling*, 941 F.3d at 1122; *Wai*, 315 F. Supp. 2d at 1268. In that vein, to the extent the Defendant argues that the Court must construe the forum-selection clause against the Plaintiff as the drafter of the Retransmission Contract, the Plaintiff disputes that it was the sole drafter of the contract. Therefore, the Court will accept the translation of the Remission Contract presented by the Plaintiff, which translates the forum-selection clause at issue as follows:

> 12.1 Parties agree that all disputes on the validity of this Contract or arising out of the interpretation, performance or cessation thereof to be settled amicably by their legal representatives.
>
> 12.2 If this is not possible, the disputes will be referred to the Romanian courts for settlement under common law.
>
> 12.3 The present contract is governed by the Romanian law.

(Pl.'s Resp. to Mot. to Dismiss, Ex. A at 4). Under Eleventh Circuit caselaw, this clause is permissive rather than mandatory. While there are no magic words that transform a forum-selection clause from permissive to mandatory, there must be some language indicating exclusivity. *Snapper, Inc.*, 171 F.3d at

7

1262 n.24. In conjunction with its translation of the Retransmission Contract, the Plaintiff submitted a declaration of the translator, Laura Oprea, explaining that the original forum-selection clause was written in the Romanian future tense and "does not express an obligation, but a possibility." (Pl.'s Resp. to Mot. to Dismiss, Ex. 1 ¶ 5 ("Oprea Declaration"). Oprea further stated that the Romanian imperative tense would have instead been used if the intent was to convey a sense of obligation. (*Id.* ¶ 7). The Defendant did not respond to the Oprea Declaration, and instead relies only on cases interpreting forum-selection clauses containing the words "will be" that were originally drafted in English. (*See* Def.'s Reply in Supp. of Mot. to Dismiss, at 2-4 & n. 6).

In fact, the Defendant misreads portions of the cases it relies on in support of its position that the forum-selection clause is mandatory rather than permissive. For example, in *Landau v. Newland International Properties, Corp.*, 2011 WL 13227739, at *2 (S.D. Fla. June 10, 2011), the court interpreted a forum-selection clause stating that "any dispute concerning [the contract] will be subject first and foremost to the courts of Panama City, Republic of Panama" to be mandatory not due to the "will be" language, but instead because of the "first and foremost" language, which the court found to indicate exclusivity. In *Emerald Grande, Inc. v. Junkin*, 334 F. App'x. 973, 976 (11th Cir. 2009), the Court found that the language "the [Okaloosa Courts] will be the venue for any dispute, proceeding, suit or legal action" to be mandatory in nature. But unlike in that case, where the clause indicated the Okaloosa

Courts would be "the" venue, the clause in the present case states that any dispute will be "referred to the Romanian courts," which lacks the same indication of exclusivity. This is especially so in light of the interpretation guidance presented by the Plaintiff in the Oprea Declaration. And in *Five Points Sarasota Investors LLC v. Investec Bank PLC*, 2023 WL 2071463, at *2-3 (M.D. Fla. Feb. 17, 2023), the court noted that "[m]andatory forum selection clauses typically include language stating that venue 'shall' or 'will' be properly laid in a specified forum" before finding that two clauses that stated "venue is properly laid in Sarasota County, Florida and that the Circuit Court in and for Sarasota County, Florida, shall have full jurisdiction" were permissive in nature. In other words, use of the words "will" or "shall" alone does not necessarily transform a permissive forum-selection clause into a mandatory one. The analysis is context specific.

For these reasons, construing the Complaint and the proffered evidence in the Plaintiff's favor, the Court finds that the forum-selection clause at issue is permissive in nature and that dismissal is therefore not mandated. The Court notes that the Plaintiff, a foreign corporation, has consented to the jurisdiction of this Court by filing suit. As to the public interest factors, the Defendant asserts that Romanian courts are better suited to interpret and apply Romanian law and, therefore, that it would be more efficient to litigate this matter in Romania. But this factor is not dispositive. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1104-05 (11th Cir.

2004). In any event, as this matter concerns a relatively straight-forward breach of contract claim, the Court has no reason to believe that applying Romanian law to this dispute will be an endeavor beyond its competence. Likewise, given that the parties have already proffered multiple translations of the Retransmission Contract, the Court is not concerned with the parties' ability to have additional discovery documents or evidence translated for the Court's review should the need arise. Accordingly, the Defendant's Motion to Dismiss [Doc. 12] should be denied.

### IV. Conclusion

For the reasons set forth above, the Defendants' Motion to Dismiss [Doc. 12] is DENIED.

SO ORDERED, this \_\_\_21st\_\_\_ day of August, 2023.

THOMAS W. THRASH, JR.
United States District Judge